**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: March 16 2012**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-32653 |
| | ) | |
| Carlton Dennis Mathis and | ) | Chapter 7 |
| Maria Antoinette Mathis, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 13] and Debtors' response [Doc. #22]. The court held a hearing on the motion that Debtors, their counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions. After the hearing, the court ordered Debtors to file certain postpetition pay advices and granted the parties leave to file any supplemental argument as they deemed appropriate. Debtors filed the additional pay advices [Doc. ## 27 & 28], and the UST filed a supplemental argument [Doc. # 29].

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this

court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and will dismiss Debtors' Chapter 7 case unless they timely convert it to a case under Chapter 13.

## **BACKGROUND**

Debtors are married and have one minor child, age 8, and have custody of a two-year old cousin who they took into their home during the past year. They also help support their two adult daughters who are both in college.

Carlton Mathis is forty-one years old. For ten years he has worked for the City of Toledo as a refuse truck driver. In April 2010, he was laid off for a period of time and, during at least one pay period in 2011, was furloughed for four days as a result of budgetary woes of the city. In July 2011, as part of the privatization of refuse collection in the city, he began working for Allied Waste. Maria Mathis is thirty-eight years old and is employed as a registered nurse case manager at Parrish Home Care where she has worked for nearly four years.

On May 9, 2010, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that their debts are primarily consumer debts. Debtors' amended Schedule D shows total secured debt in the amount of $285,486. [Doc. # 19, p. 7/9]. Their secured debts include $222,741 secured by a mortgage on their home, which they value at $167,000, and $47,745 secured by a mortgage on rental property, which they value at only $3,000. [*Id.*]. Carlton Mathis testified that the rental property has been vandalized and has not been rented since 2009. Debtors have stated an intention to surrender both properties. Their secured debt also includes $8,000 secured by a 2004 Cadillac and $7,000 secured by a 2011 Toyota Solara. Debtors' bankruptcy schedules show unsecured priority tax debt in the amount of $800 and unsecured nonpriority debts in the amount of $167,203, which amount consists primarily of student loan debt in the amount of $118,952 and deficiencies on three surrendered vehicles in the total amount of $42,619. [UST Ex. 2, pp. 20-24].

Debtors' Schedule I shows monthly income of Carlton Mathis, less payroll deductions for taxes, health insurance and union dues, in the amount of $2,774 and monthly income of Maria Mathis, less deductions for payroll taxes and life insurance, in the amount of $3,276, for total monthly net income of $6,050. Carlton Mathis's income reflects wages earned while working for the City of Toledo. However, he has filed more recent weekly pay advices from Allied Waste where he is now employed that show that

2

his average weekly income, less payroll deductions, is $732, or $3,172 per month.[1] Those payroll deductions include social security taxes that were not withheld by the City of Toledo, union dues, and 401(k) plan contributions of 5% of his gross wages, or an average contribution amount of approximately $220 per month. While his net wages appear to have increased by approximately $400, his cost for health benefits, which was not yet being deducted from his wages at the time of the hearing, will increase dramatically from biweekly deductions by the City of Toledo of $27.50, to weekly deductions under the Allied Waste plan of $125, or approximately $542 per month. Thus, going forward, with the onset of the health insurance deduction, Carlton Mathis will experience a net decrease in take home pay of approximately $144 ($2,774 - ($3,172 - $542)).

In addition, Maria Mathis's average gross monthly income during the first four months of 2011 was only $4,362, and her average monthly income after payroll deductions was approximately $3,063, which is $213 less than the net income reported on Schedule I.[2] [*See* Doc. # 3, pp. 5-7]. Although she testified that her income varies depending on the patient caseload, Debtors' Statement of Financial Affairs shows a downward trend in her income over the past three years, with gross income of $74,344 in 2009, $65,075 in 2010, and $17,500 during the first four months of 2011, which annualized is approximately $52,500. [*See* UST Ex. 2, SOFA, ¶ 1]. The net effect of these adjustments to the income reported on Schedule I is that Debtors' monthly household net wages after payroll deductions is approximately $5,693 ($6,050 - ($144 + 213)). In addition to their monthly wages, Debtors receive child support payments of $259 per month for their two-year old cousin, which is not included on their Schedule I and which results in total monthly net income of approximately $5,952.

Debtors have also received income tax refunds of approximately $6,000 for 2009 and 2010. However, these refunds are in large part due to the payment of mortgage interest that Debtors have not paid during 2011 and will not be paying in the future as they intend to surrender the properties. And finally, Carlton Mathis testified that he will be receiving a $1,700 payment from the City of Toledo in settlement of a union contract dispute.

Debtor's amended Schedule J shows total monthly expenses of $5,066, which includes child care

---

[1] The weekly pay advices are for pay periods ending July 23, 2011, July 30, 2011, and August 6, 2011, and show weekly income less payroll deductions of $742.01, $798.66, and $655.34, respectively, which reflects an average weekly net income of $732, or $3,172 per month (($732 x 52) ÷ 12). [*See* Doc. ## 27 & 28].

[2] Maria Mathis's total net income received during the first four months of 2011 totals $12,251.35, for an average of $3,062.83 per month. [*See* Doc. 3, pp. 5-7].

expenses for the two-year old. [Doc. # 19, p. 8]. Those expenses also include, among other things, a $261 car payment for their Toyota Solara and an $845 car payment, which Debtors agree is overstated by $545, the amount of the payment for the Lexus that they surrendered. The balance of $300 represents their installment payment for their Cadillac. According to Debtors, both the Toyota and the Cadillac will be paid in full in two years. In addition, Debtors' monthly expenses include payments on student loans in the total amount of $400. Notably missing from their budgeted expenses is any expense for rent or their home mortgage. Although they are not currently making their mortgage payment, which had increased to $2,300, they have placed a deposit on a townhouse that is being renovated and that they plan on moving into after the renovations are complete. Carlton Mathis testified that they will be paying $1,000 as monthly rent for the townhouse. Adjusting Debtors expenses to reflect the correct car payment expense and their anticipated monthly rent, their monthly expenses total $5,521. This compares to their average monthly net income of $5,952, for an approximate monthly disposable income of $431.

Debtors' Form B22A calculating the means test shows that their annualized current monthly income at the time of filing this case was above the median income for a household the size of Debtors in Ohio. According to Debtors' means test calculation, no presumption of abuse arose under 11 U.S.C. § 707(b)(2). The UST filed a motion to dismiss for abuse and is now proceeding only under § 707(b)(3).

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse

4

under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtors filed their petition in bad faith but instead contends that the totality of their financial circumstances demonstrates that they are not needy and that granting them a discharge would be an abuse of the provisions of Chapter 7. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007).

Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126. As the movant, the UST carries the overall burden of demonstrating, by at least a preponderance of the evidence, that the Debtors' case should be dismissed. *In re Tucker*, 389 B.R. 535, 538 (Bankr. N.D. Ohio 2008).

The UST asserts that Debtors have sufficient disposable income to pay a significant portion of their unsecured debt. The UST also asserts that funds used to pay Debtors' monthly student loan expenses should be treated as income available to fund a Chapter 13 plan that provides for a ratable distribution of these funds among all creditors. Finally, the UST asserts that significant future income tax refunds can also be used to repay unsecured creditors.

The record shows that Debtors' financial predicament stemmed from several changes in their circumstances that they have experienced during the year before filing bankruptcy, including Carlton Mathis's layoff at the City of Toledo and later change in employment, obtaining custody of his two-year-old

5

cousin, an increase in Debtors' mortgage payment, and a decline in Maria Mathis's income. The court also notes and, in evaluating the totality of their financial circumstances has considered, that Debtors have made meaningful efforts to decrease their expenses by surrendering three vehicles and have stated their intention to surrender their home and rental property, which is the kind of belt-tightening that is required of Chapter 7 debtors. Nevertheless, the court agrees that, under the circumstances of this case, Debtors do have the ability to pay a significant portion of their unsecured debt such that granting them a Chapter 7 discharge would be an abuse of those provisions.

Debtors are eligible for Chapter 13 should they choose to seek such relief. Notwithstanding testimony that Maria Mathis's income varies depending on her patient caseload, and notwithstanding testimony regarding Carlton Mathis being laid off from work at the City of Toledo in April 2010, Debtors currently are individuals with regular and sufficiently stable income and their debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). Although both Debtors have worked for their current employer a relatively short time, there is no testimony regarding potential layoffs from those jobs or reason to believe that such may occur. Moreover, to the extent that Debtors seek relief under Chapter 13 and their financial circumstances substantially change for the worse at some time in the future, they would have additional options at that time, such as modification of their Chapter 13 plan under § 1329, a hardship discharge under § 1328, or reconversion to Chapter 7.

As discussed above, Debtors' adjusted monthly income after anticipated payroll deductions and adjusted monthly expenses totals $431, which could be devoted to paying their prepetition unsecured debt. The UST has not shown that Debtors will continue to receive income tax refunds similar to what they received in 2009 and 2010. The sizeable refunds they have received are largely the result of mortgage interest deductions to which they will no longer be entitled. However, the court agrees that the $400 budgeted to pay Debtors' student loan expenses should be applied to a ratable distribution among all of Debtors' unsecured creditors. This court has previously held that the nondischargeability of a student loan is not, without more, a basis to permit a debtor to treat the student loan creditors more favorably than other unsecured creditors. *In re Rooney*, 436 B.R. 454, 459 (Bankr. N.D. Ohio 2010) (explaining that "to treat certain unsecured creditors more favorably simply because they hold a nondischargeable claim would elevate such claims to a priority status that was not intended by Congress").

If at least $800 per month were applied to repay unsecured creditors over the sixty-month maximum plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), Debtors would have

approximately $43,700 available after payment of their priority tax debt and the Chapter 13 Trustee's administrative expenses to pay their unsecured nonpriority debt. Assuming Debtors' unsecured nonpriority debt includes the anticipated estimated deficiency judgments on their home mortgage in the amount of $55,741 and on their rental property mortgage in the amount of $44,745, as well as the $167,203 in unsecured debt set forth in their Schedule F, their unsecured nonpriority debt totals $267,689. Unsecured creditors may potentially receive a dividend of approximately sixteen percent, or more if claims are not filed by all creditors as frequently occurs. *See In re Behlke*, 338 F.3d at 437 (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors). And this does not consider the fact that Debtors' remaining cars will be paid for in full within two years. *See Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470, 476-77 (6th Cir. 2010)(future changes in expenses known to incur may be considered in determining projected disposable income under Chapter 13); *Seafort v. Burden (In re Seafort)*, –F.3d–, 2012 FED App. 0045P, at ** 19 (6th Cir. Feb. 15, 2012) (income available after 401(k) plan loans paid off post-petition shall be contributed to Chapter 13 plan payments). Notwithstanding the difficult circumstances largely not of their own making that Debtors experienced during the year before they filed this case, and their efforts to address those circumstances, with the protection of the automatic stay to stop their financial situation from worsening the court finds that Debtors have income that could be devoted to make a meaningful pro rata distribution to all of their unsecured creditors through Chapter 13.

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtors' financial problems.

In conclusion, the court finds that Debtors have reasonably stable income and are able to pay a meaningful portion of their unsecured debts out of their future income without Debtors or their dependents being deprived of adequate housing, food, clothing, or other necessities and that granting Debtors relief under Chapter 7 of the Bankruptcy Code would, therefore, be an abuse of the provisions of that chapter given the totality of their financial circumstances.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtors are allowed thirty (30) days from the date of this order to file a

motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. #13] will be granted, and this case will be dismissed, by separate order of the court.

8